## BILLBOARDS DIVINITY, LLC *v.* COMMISSIONER OF TRANSPORTATION ET AL.
### (AC 32860)

Robinson, Alvord and Espinosa, Js.

Argued October 27, 2011—officially released February 7, 2012

*Derek V. Oatis*, for the appellant (plaintiff).

*Paul K. Pernerewski*, assistant attorney general, with whom, on the brief, was *George Jepsen*, attorney general, for the appellees (defendants).

*Opinion*

ROBINSON, J. The plaintiff, Billboards Divinity, LLC, which filed the underlying action for a writ of mandamus directing the defendants, the commissioner of transportation (commissioner) and the department of transportation (department), to issue a permit authorizing the plaintiff to erect two billboards on property it owns in Bristol, appeals from the judgment of the trial court granting summary judgment for the defendants. On appeal, the plaintiff claims that the court erred by failing to recognize its nonconforming use of a billboard as a constitutionally protected property right. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of the present appeal. In 1949, the state issued permit number 1078 to Murphy Advertising Company, permitting the company to maintain two billboards on a parcel of land in Bristol at Route 72 and Divinity Street (subject property). That portion of Route 72 is a nonlimited access, federal-aid primary highway. The billboards were located within 660 feet of the right-of-way and were visible from the traveled portion of the highway.

In August, 2006, the plaintiff purchased the subject property. At the time of the purchase, there was an existing lease between the prior owner of the subject property and NextMedia Outdoors, Inc. (NextMedia). NextMedia owned and controlled the billboards on the subject property and was the holder of permit number 1078. The lease, which had been in effect since 1989,

automatically renewed each year on June 1, subject to the parties' right to terminate the lease.

The plaintiff, hoping to secure more lucrative terms, sought to renegotiate the terms of the lease with NextMedia. Those negotiations proved to be unsuccessful, however, and, on November 16, 2006, the plaintiff sent written notice to NextMedia that it intended to terminate the lease. NextMedia, which, under the lease, retained the right to remove the billboards from the subject property, removed the billboards on May 29, 2007.[1]

On August 2, 2007, the department received a letter from NextMedia indicating that it wanted the state to subtract permit number 1078 from the state's inventory of billboards. The department treated the letter as a request for cancellation of permit number 1078, which the department formally cancelled on August 23, 2007.

On August 24, 2007, the plaintiff filed an application with the department in accordance with § 13a-123-12 of the Regulations of Connecticut State Agencies to erect two new billboards on the subject property, equal in size to the billboards that had been removed by NextMedia. The department denied the plaintiff's application by letter dated September 11, 2007. Along with its application, the plaintiff submitted a determination letter from the city of Bristol's zoning enforcement officer stating that replacement of the old billboards with new structures was permitted under Bristol's zoning regulations as a continuation of a nonconforming use. Nevertheless, according to the department's letter, at the time of the application the subject property was located in a multifamily zone, and the department's regulations require that any proposed sign be erected on land that is zoned industrial or commercial and in

---

[1] There are no allegations that NextMedia's removal of the billboards was in anyway tortious or unlawful.

actual use as such. On that basis, the department denied the plaintiff's application. The department later indicated in a separate letter to the plaintiff's counsel that a subsequent field inspection had revealed that the proposed new sign would have been within 100 feet of a park, which also is not permitted by law.

On February 1, 2008, the plaintiff filed the underlying action for a writ of mandamus directing the defendants to approve its permit application. On January 29, 2010, the defendants filed a motion for summary judgment, claiming that there were no genuine issues of material fact in dispute and that they were entitled to judgment as a matter of law. The defendants set forth two arguments in support of their assertion that the plaintiff was not entitled to a writ of mandamus. The defendants first argued that a writ of mandamus was not appropriate because the issuance of a billboard permit is not a ministerial act. Second, the defendants argued that the plaintiff was not entitled to a permit under applicable state and federal laws and regulations. The plaintiff filed an opposition to the motion for summary judgment, arguing that it had a right to continue with a nonconforming use of its property and that NextMedia's removal of the previous billboards did not extinguish that nonconforming use.[2]

On July 28, 2010, the court issued a written decision granting the defendants' motion for summary judgment. The court concluded that the new billboards proposed by the plaintiff would not meet state and federal requirements for the continuance of a nonconforming sign and, therefore, the defendants were not required to issue the requested permit. The plaintiff filed a motion to

[2] The trial court file does not contain a copy of the opposition to the motion for summary judgment, but the plaintiff included a copy in the appendix to its reply brief. The court heard argument on the motion for summary judgment on April 12, 2010. The parties did not provide this court with a transcript of that hearing.

reargue the court's decision, in which it argued that the "[c]ourt's decision failed to address the conduct of the [d]efendants, denying a permit to the [p]laintiff to continue [its] nonconforming use, as violative of the [p]laintiff's federal and state constitutional protections." The court denied the motion to reargue without comment, and this appeal followed.

The plaintiff's brief asserts a single issue on appeal, namely, "[d]id the trial court err in not recognizing [p]laintiff's nonconforming use of a billboard as a constitutionally protected property right and granting summary judgment for the defendant[s] . . . ." The plaintiff claims that it has a right to the continued use of its property as a site for two billboards and that the defendants were required to issue a permit so it could replace the billboards removed by its former lessee, NextMedia. The defendants argue that the plaintiff failed to raise any constitutional claim to the trial court and that the plaintiff was not entitled to a writ of mandamus, as the court correctly applied federal and state laws and regulations in determining that the proposed billboards did not qualify as a prior nonconforming use. We agree with the defendants and affirm the decision of the court.

We first note that, to the extent that the plaintiff seeks to assert on appeal that the defendants' denial of its permit application and/or the court's granting of summary judgment in favor of the defendants on its mandamus action amounted to an unconstitutional taking of property in violation of our federal and state constitutions, we decline to address such claims because the plaintiff did not allege in its complaint a taking or seek just compensation for a taking under the state or federal constitutions, nor did the plaintiff properly raise a constitutional argument in its written opposition to the motion for summary judgment. Further, as the plaintiff itself admits, both in its motion to

reargue the motion for summary judgment and in its appellate brief, the court never addressed any constitutional argument in its memorandum of decision, nor is there any indication in the court's decision that it considered any constitutional issues. Although the plaintiff alluded to a constitutional violation in its motion to reargue the summary judgment motion, the court denied that motion without any comment. The plaintiff never filed a motion for articulation of the court's decision denying the motion to reargue, nor sought articulation of the court's decision granting the motion for summary judgment, which would have been the proper means of seeking a ruling on a constitutional claim that the plaintiff believes was overlooked by the court. See, e.g., *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 292 Conn. 1, 59 n.38, 970 A.2d 656 (noting appellant's responsibility "to move for an articulation to clarify the basis of the trial court's ruling or to ask for a ruling on any overlooked matter"), cert. denied sub nom. *Bridgeport Roman Catholic Diocesan Corp.* v. *New York Times Co.*, 558 U.S. 991, 130 S. Ct. 500, 175 L. Ed. 2d 348 (2009).

As this court repeatedly has stated, we will not review an issue on appeal that was never properly raised in or decided by the trial court. See *U.S. Bank National Assn.* v. *Iaquessa*, 132 Conn. App. 812, 814, 34 A.3d 1005 (2012), citing *Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 444 n.10, 685 A.2d 670 (1996) (claims neither addressed nor decided by trial court not properly before appellate tribunal); *State* v. *Miller*, 186 Conn. 654, 658, 443 A.2d 906 (1982) ("[o]nly in the most exceptional circumstances will this court consider even a constitutional claim not properly raised and decided in the trial court"). The plaintiff also has not requested that this court review its unpreserved constitutional claim under *Golding*[3] or as plain error. See

---

[3] *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

*Perricone* v. *Perricone*, 292 Conn. 187, 212 n.24, 217, 972 A.2d 666 (2009); *U.S. Bank National Assn.* v. *Iaquessa,* supra, 815–16. Finally, even if we concluded that the plaintiff properly preserved its constitutional claim at trial, the plaintiff has failed to brief that claim adequately. "Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim receives only cursory attention in the brief without substantive discussion, it is deemed to be abandoned." (Internal quotation marks omitted.) *Foster* v. *Foster*, 84 Conn. App. 311, 324, 853 A.2d 588 (2004) (declining to review inadequately briefed federal constitutional claim); see also *State* v. *Sinvil*, 270 Conn. 516, 518 n.1, 853 A.2d 105 (2004) (deeming state constitutional claim abandoned because defendant had not provided independent analysis of constitutional issue). The plaintiff's brief fails to provide sufficient analysis to permit review of an alleged constitutional deprivation. Our review therefore is limited to whether the court properly determined that the defendants were entitled to summary judgment as a matter of law on the plaintiff's request for a writ of mandamus.

We next set forth relevant legal principles, including the standard we apply in reviewing the granting of a motion for summary judgment. "Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse

claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Citation omitted; internal quotation marks omitted.) *Gold* v. *East Haddam*, 290 Conn. 668, 677–78, 966 A.2d 684 (2009). "Our review of the trial court's decision to grant [a party's] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Southwick at Milford Condominium Assn., Inc.* v. *523 Wheelers Farm Road, Milford, LLC*, 294 Conn. 311, 318, 984 A.2d 676 (2009).

"[M]andamus is an extraordinary remedy. It is designed to enforce a plain positive duty. The writ will issue only when the person against whom it is directed is under a clear legal obligation to perform the act compelled and the party seeking the writ has a clear legal right to the performance. . . . It, therefore, cannot be invoked to enforce a discretionary act. . . . Mandamus neither gives nor defines rights which one does not already have. . . . It acts upon the request of one who has a complete and immediate legal right; it cannot and does not act upon a doubtful and contested right. . . . The plaintiff in an action for a writ of mandamus bears the burden of proving the deprivation of a clear legal right that warrants the imposition of such an extraordinary remedy." (Internal quotation marks omitted.) *Morris* v. *Congdon*, 85 Conn. App. 555, 559, 858 A.2d 279 (2004), rev'd on other grounds, 277 Conn. 565, 893 A.2d 413 (2006). In the present case, therefore, it follows that summary judgment in favor of the defendants on the plaintiff's mandamus action was appropriate if there were no genuine issues of material fact

and the plaintiff could not show as a matter of law that it has a clear legal right to the approval of its permit application.

The Highway Beautification Act of 1965, 23 U.S.C. § 131 et seq. (act), was enacted to exert federal control over the erection and maintenance of outdoor advertising signs, displays and devices located within 660 feet of the nearest edge of the right-of-way and visible from the traveled portion of interstate and federal-aid primary highways. 23 U.S.C. § 131 (a) and (b). The act requires states to enter into agreements with the federal government to carry out the provisions and the goals of the act or else risk the loss of a portion of their federal highway funding. 23 U.S.C. § 131 (b). It is undisputed that the subject property on which the plaintiff sought to erect the replacement billboards is located within 660 feet of a federal-aid primary highway and is visible from that highway; therefore, in determining whether the plaintiff had a clear legal right to the issuance of a permit to erect the replacement billboards, we must first look to the relevant provisions of the act.

Section (d) of the act provides: "In order to promote the reasonable, orderly and effective display of outdoor advertising while remaining consistent with the purposes of this section, signs, displays, and devices whose size, lighting and spacing, consistent with customary use [as] is to be determined by agreement between the several States and the Secretary, may be erected and maintained within six hundred and sixty feet of the nearest edge of the right-of-way within areas adjacent to the Interstate and primary systems which are zoned industrial or commercial under authority of State law, or in unzoned commercial or industrial areas as may be determined by agreement between the several States and the Secretary [of Transportation]. The States shall have full authority under their own zoning laws to zone areas for commercial or industrial purposes, and the

actions of the States in this regard will be accepted for the purposes of this Act. Whenever a bona fide State, county, or local zoning authority has made a determination of customary use, such determination will be accepted in lieu of controls by agreement in the zoned commercial and industrial areas within the geographical jurisdiction of such authority. . . ." 23 U.S.C. § 131 (d). Section (d), therefore, clearly limits the erection of signs falling within the provisions of the act solely to areas that are zoned by state or local authorities for commercial or industrial purposes, leaving determinations regarding size, lighting and spacing of signs to be determined in the individual federal-state agreements.

The federal regulations promulgated in support of the act contain a provision addressing the issue of "nonconforming" signs, which it defines as "a sign which was lawfully erected but does not comply with the provisions of State law or State regulations passed at a later date or later fails to comply with State law or State regulations due to changed conditions. . . ." 23 C.F.R. § 750.707 (b). "Changed conditions include, for example, signs lawfully in existence in commercial areas which at a later date become noncommercial . . . ." Id. The regulation authorizes each state to include in its agreement with the federal government a so-called "grandfather clause" to allow for the continuation of nonconforming signs. Id., § 750.707 (c).[4] The

---

[4] Section 750.707 (c) of title 23 of the Code of Federal Regulations provides: "Grandfather clause. At the option of the State, the agreement may contain a grandfather clause under which criteria relative to size, lighting, and spacing of signs in zoned and unzoned commercial and industrial areas within 660 feet of the nearest edge of the right-of-way apply only to new signs to be erected after the date specified in the agreement. Any sign lawfully in existence in a commercial or industrial area on such date may remain even though it may not comply with the size, lighting, or spacing criteria. This clause only allows an individual sign at its particular location for the duration of its normal life subject to customary maintenance. Preexisting signs covered by a grandfather clause, which do not comply with the agreement criteria have the status of nonconforming signs."

clause only provides for the continuance of a sign "at its particular location for the duration of its normal life subject to customary maintenance. . . ." Id.

The federal regulations also set forth criteria necessary to maintain and continue a nonconforming sign. For example, the sign must remain "substantially the same as it was on the effective date of the State law or regulations. . . ." Id., § 750.707 (d) (5). The regulation authorizes each state to "develop its own criteria to determine when customary maintenance ceases and a substantial change has occurred which would terminate nonconforming rights." Id. Further, a nonconforming sign can only continue "as long as it is not destroyed, abandoned, or discontinued. . . ." Id., § 750.707 (d) (6). Again, the regulations leave it to the states to "develop criteria to define destruction, abandonment and discontinuance. . . ." Id., § 750.707 (d) (6) (i).

Connecticut entered into an agreement with the federal government pursuant to the act, which led to the enactment of General Statutes § 13a-123. Section 13a-123 (a) provides in relevant part: "The erection of outdoor advertising structures, signs, displays or devices within six hundred sixty feet of the edge of the right-of-way, the advertising message of which is visible from the main traveled way of any portion of the National System of Interstate and Defense Highways, hereinafter referred to as interstate highways, the primary system of federal-aid highways or other limited access state highways, is prohibited except as otherwise provided in or pursuant to this section . . . ." Section 13a-123 (c) authorizes the commissioner of transportation to "promulgate regulations for the control of outdoor advertising structures, signs, displays and devices along interstate highways, the primary system of federal-aid highways and other limited access state highways. Such regulations shall be as, but not more, restrictive than

the controls required by Title I of the Highway Beautification Act of 1965 and any amendments thereto with respect to the interstate and primary systems of federal-aid highways . . . ." Section 13a-123 (e) provides in relevant part: "Subject to regulations adopted by the commissioner and except as prohibited by state statute, local ordinance or zoning regulation signs, displays and devices may be erected and maintained within six hundred sixty feet of primary and other limited access state highways in areas which are zoned for industrial or commercial use under authority of law . . . ."

Among the regulations promulgated by the commissioner in accordance with § 13a-123 (d), is a grandfather clause of the type authorized by 23 C.F.R. § 750.707 (c). Section 13a-123-12 of the Regulations of Connecticut State Agencies provides in relevant part that signs legally "erected prior to March 19, 1968, in zoned commercial or industrial areas in actual use . . . may be continued . . . ." The regulation defines "erect" to mean "to construct, build, raise, assemble, place, affix, attach, create, paint, draw, or in any other way bring into being or establish, but it shall not include any of the foregoing activities when performed as an incident to the change of advertising message or customary maintenance or repair of a sign or sign structure." Id., § 13a-123-2 (b).

Applying the relevant state and federal statutes and regulations to the undisputed facts of the present case, the plaintiff's permit application sought to erect new billboards on property that currently is zoned for multi-family use. Because, under both federal and state law, billboards can be erected only in an area zoned as industrial or commercial; 23 U.S.C. § 131 (d) and General Statutes § 13a-123 (e); any billboards erected on the subject property clearly would violate provisions of both state and federal laws.

The plaintiff nevertheless argues that the billboards it sought to construct were intended to replace the billboards removed by NextMedia. It is undisputed that the prior billboards legally existed before the enactment of the federal-state agreement and, therefore, would have been permitted to continue as nonconforming signs. The plaintiff believes it has the legal right to replace those signs in order to continue with a nonconforming use of its property. Pursuant to the statutory and regulatory scheme set forth previously, however, the plaintiff's argument has merit only if its erection of new billboards qualifies as "customary maintenance or repair" of the prior nonconforming signs. 23 C.F.R. § 750.707 (d) (5) and (6); Regs., Conn. State Agencies § 13-123-12.

"Customary maintenance and repair" is not defined in the regulations; therefore, the term must be construed according to its commonly approved usage. General Statutes § 1-1 (a). "If a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Key Air, Inc.* v. *Commissioner of Revenue Services*, 294 Conn. 225, 235, 983 A.2d 1 (2009). Webster's Third New International Dictionary (1993) defines "maintenance" as "the labor of keeping something (as buildings or equipment) in a state of repair or efficiency," and it defines "repair" as "restoration to a state of soundness, efficiency, or health." The term "maintenance and repair" as used in reference to nonconforming signs logically refers to actions taken to perpetuate or to restore a presently existing sign. Here, NextMedia lawfully removed the existing, nonconforming billboards from the subject property, apparently without protest by the plaintiff, and the permit for those billboards was terminated. There is no indication that the plaintiff

sought to have either the billboards or the permit transferred to its control. Thus, rather than seeking to make repairs to or to maintain an existing, nonconforming billboard, the plaintiff's application sought a permit to erect two wholly new signs.[5]

The plaintiff has not provided citations to any cases from Connecticut or other jurisdictions in which a property owner was allowed to replace a nonconforming billboard that was lawfully removed from the property, and our research has not revealed any such cases. By contrast, other jurisdictions have found that once nonconforming signs are removed completely, or they have been repaired substantially or altered in some way, any right to the continuation of the nonconformity terminates. See, e.g., *Zanghi* v. *State*, 204 App. Div. 2d 313, 314, 611 N.Y.S.2d 263 (1994) (plaintiff property owner had no clear legal right to erect new billboard to replace nonconforming billboard removed by plaintiff's tenant); *Meredith Outdoor Advertising, Inc.* v. *Iowa Dept. of Transportation*, 648 N.W.2d 109, 118 (Iowa 2002) (changes to signs too significant to qualify as customary maintenance so nonconforming use terminated).

Because our plenary review reveals that there are no factual issues in dispute and, as a matter of law, the plaintiff cannot show that it has a clear legal right to the approval of its application to erect new billboards on the subject property, we affirm the court's decision to render summary judgment in favor of the defendants.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] We need not decide at this time whether the complete replacement of a nonconforming sign that was destroyed by accident, natural disaster or foul play would constitute customary maintenance and repair of the destroyed sign so as to permit the continuation of the nonconforming use. See, e.g., *Dept. of Transportation* v. *Keller Development Corp.*, 122 Ill. App. 3d 1038, 1040, 462 N.E.2d 532 (1984) (complete replacement of nonconforming sign destroyed in windstorm constituted legal repair and did not terminate nonconforming use).