******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# RONNA-MARIE GUILIANO *v.* JEFFERSON RADIOLOGY, P.C., ET AL.
## (AC 42835)

Bright, C. J., and Alvord and Devlin, Js.

*Syllabus*

The plaintiff sought to recover damages for the alleged medical malpractice of the defendants, a radiology practice and a physician, claiming that they were negligent in failing to timely diagnose a malignancy in her left breast, resulting in a delay in the diagnosis and treatment of her cancer. At trial, the plaintiff sought to offer the testimony of G, a radiologist, regarding the proper standard of care, and the testimony of L, a radiology oncologist who treated the plaintiff. The defendants' counsel objected to the form of certain questions posed to G by the plaintiff's counsel, many of which the trial court sustained, and the trial court imposed a time limitation on the length of the plaintiff's direct examination of L. The jury returned a verdict in favor of the defendants and the court rendered judgment for the defendants, from which the plaintiff appealed to this court. *Held*:

1. The plaintiff could not prevail on her claim that the trial court abused its discretion by sustaining the objections of the defendants' counsel to the form of certain questions that were posed by her counsel to G because the court's evidentiary rulings were harmless; although the court did sustain objections to certain questions asked by the plaintiff's counsel concerning the standard of care and whether the defendants had breached that standard, the trial transcripts reflected that G testified to those matters later in the proceedings.

2. This court declined to review the plaintiff's claim that the trial court abused its discretion by placing a time limit on the presentation of L's testimony, the plaintiff having failed to preserve her claim; the plaintiff raised no objection to the court over the time limit imposed and did not identify any evidence that she was unable to elicit from L due to the time limit.

3. This court declined to review the plaintiff's claim that the time limit constituted a denial of her right of access to the courts and violated article first, § 10, of the Connecticut constitution, the plaintiff having failed to adequately brief her unpreserved claim; the plaintiff's brief contained no analysis as to why her unpreserved claim should be reviewed pursuant to *State* v. *Golding* (213 Conn. 233) or any substantive analysis as to why the time limit constituted a constitutional violation.

Argued April 14—officially released August 10, 2021

*Procedural History*

Action to recover damages for alleged medical malpractice, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the plaintiff withdrew the claims against the defendant Julie S. Gershon et al.; thereafter, the matter was tried to the jury before *Cobb, J.*; verdict and judgment for the named defendant et al., from which the plaintiff appealed to this court. *Affirmed.*

*John R. Williams*, for the appellant (plaintiff).

*Kristin Connors*, with whom was *Rebecca N. Brindley*, for the appellees (named defendant et al.).

*Opinion*

BRIGHT, C. J. The plaintiff, Ronna-Marie Guiliano, appeals from the judgment of the trial court, rendered after a jury trial, in favor of the defendants William S. Poole, a physician, and Jefferson Radiology, P.C. (Jefferson Radiology).[1] On appeal, the plaintiff claims that the trial court abused its discretion by sustaining the objections of the defendants' counsel to the form of certain questions her counsel had posed to one of her expert witnesses. Additionally, the plaintiff claims that the trial court abused its discretion and violated her constitutional right of access to the courts by placing a time limit on her direct examination of a second expert witness. We disagree and affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiff's appeal. The plaintiff commenced the present action on April 21, 2014. In her operative complaint, the plaintiff alleged that she had a mammogram conducted by Jefferson Radiology in August, 2010. In December, 2010, the plaintiff complained to a physician of a lump in her left breast. In January, 2011, the plaintiff attended an appointment with her primary care physician, who ordered an ultrasound on her left breast. A few days after the appointment, Jefferson Radiology performed an ultrasound on the plaintiff's left breast. The reviewing physician noted that a "small, benign appearing intramammary lymph node is seen," and a routine mammographic follow-up was recommended for the plaintiff. In August, 2011, the plaintiff again complained of a lump in her left breast to a health-care provider. A bilateral mammogram was conducted and a routine follow-up was recommended.

In September, 2012, the plaintiff again reported to her primary care physician that she had a lump in her left breast. Jefferson Radiology performed a bilateral mammogram and an ultrasound on her right breast.[2] Poole reviewed the mammograms and ultrasound. Poole noted that the "[n]odular density in the left breast is benign," the "palpable abnormality felt by the provider in the right breast at 12 o'clock is not seen on ultrasound," and "there is no sonographic evidence of malignancy." Poole recommended that the plaintiff return in one year for a screening.

In March, 2013, the plaintiff again complained of a lump or thickening of her left breast, and Jefferson Radiology conducted a mammogram and ultrasound on the plaintiff's left breast. Jefferson Radiology identified calcification, a mass, and an abnormal lymph node in the plaintiff's left breast. On March 8, 2013, the plaintiff underwent a biopsy of the lump and the abnormal lymph node. The tissue from the biopsy demonstrated that the plaintiff was suffering from infiltrating mammary carcinoma, and the left axillary lymph node biopsy

showed a metastatic mammary carcinoma. In July, 2013, the plaintiff underwent bilateral mastectomies as well as removal of multiple lymph nodes.

In her operative complaint, the plaintiff set forth claims of negligence and vicarious liability. The plaintiff alleged, inter alia, that the defendants' negligence in failing to timely diagnose a malignancy in her left breast resulted in a delay in the diagnosis and treatment of her cancer. A jury trial commenced on March 19, 2019. During the trial, the plaintiff presented the testimony of two expert witnesses, Linda Griska and Kenneth Leopold. The testimony of both of these witnesses is at issue in this appeal. Griska, a diagnostic radiologist specializing in breast imaging, testified that Poole violated the relevant standard of care for a radiologist in 2012 when he reviewed the results of the plaintiff's September, 2012 mammogram and ultrasound. In particular, she testified that Poole failed to take additional views of the left breast based on the results of the mammogram. She also testified that Poole should have conducted an ultrasound on the left breast at that time.

Leopold, the plaintiff's treating radiology oncologist, testified to the radiation treatment the plaintiff received and the effects that the defendants' delayed diagnosis of the plaintiff's breast cancer had on her treatment.

Despite the testimony of Griska and Leopold, on April 4, 2019, the jury returned a verdict in favor of the defendants. The court accepted the jury's verdict and rendered judgment for the defendants. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff first claims that the trial court abused its discretion by sustaining the objections of the defendants' counsel to the form of certain questions that her counsel had posed to Griska. The plaintiff argues that the defendants' counsel engaged in a deliberate strategy to confuse the plaintiff's counsel and that the court "consciously participated in that strategy by prohibiting [the] plaintiff's attorney from consulting with anyone other than cocounsel in her attempt to comprehend the reasons why the court was excluding her proposed evidence and explicitly refusing to explain in what respects the court considered the questions to be objectionable." The plaintiff argues that it was clear to the court that the plaintiff's counsel did not comprehend the basis of the court's rulings sustaining the objections to her questions to Griska. The plaintiff further argues that she was precluded from presenting "critical expert evidence" in support of her claim as a consequence of the court's rulings and that she can only speculate as to the court's grounds for sustaining the repeated objections to the plaintiff's questions.

The defendants argue that the plaintiff failed to preserve her claims concerning the court's evidentiary rul-

ings as to Griska, the court's rulings were proper, and any errors in the court's rulings were harmless. We agree with the defendants that the court's rulings were harmless because they did not prevent the plaintiff from eliciting relevant expert testimony from Griska. Consequently, we do not address whether the plaintiff properly preserved her claim or the propriety of the court's rulings.

The following additional facts and procedural history inform our conclusion. In the section of the plaintiff's appellate brief titled "statement of the case," the plaintiff states that the trial court imposed unexplained limits on the presentation of her case and references the following colloquy that occurred during the direct examination of Griska on the afternoon of March 19, 2019:

"[The Plaintiff's Counsel]: Okay. And in a patient that presents with—with a nodular density, is taking one spot view the standard of care to explore that?

"[The Defendants' Counsel]: Objection to the form.

"The Court: Sustained.

"[The Plaintiff's Counsel]: Do you have an opinion as to whether Dr. Poole's imaging breached the standard of care?

"[The Defendants' Counsel]: Objection as to the form.

"The Court: Sustained.

"[The Plaintiff's Counsel]: When a radiologist observes a nodular density, how should they explore that?

"[The Defendants' Counsel]: Objection to the form.

"The Court: Okay. I'm going to allow that question. Go ahead.

"[The Witness]: Could you repeat the question?

"[The Plaintiff's Counsel]: Yes. If a—if a radiologist observes a nodular density, how—what steps should they take to explore that?

"[The Defendants' Counsel]: Objection to the form, Your Honor.

"The Court: All right.

"[The Defendants' Counsel]: May we approach?

"The Court: Yes.

(Sidebar)

"The Court: All right. The court's going to sustain the objection. All right. Counsel.

"[The Plaintiff's Counsel]: One moment, Your Honor.

"[The Plaintiff's Counsel]: Dr. Griska, do you have an opinion based on medical certainty as to whether Dr. Poole breached the standard of care?

"[The Defendants' Counsel]: Objection to the form. If we could be heard, Your Honor.

"The Court: Yeah. You want to be heard outside—can we hear this outside the presence of the jury?

"[The Defendants' Counsel]: Yes, please.

"The Court: All right. I'm going to ask the jury to step into the jury room for a moment.

(Jury exits the courtroom)

"The Court: Okay.

"[The Defendants' Counsel]: Your Honor, if Dr. Griska could be excused while we have this argument outside the presence of her.

"The Court: Okay. Where is she? All right. Oh, there you are. If you just step in the hallway for me, please.

(Witness exits the courtroom)

"The Court: Okay. So, the objection has to do with now because you're getting into the critical part of your examination, asking questions related to the expert opinions—the expert's opinion on the very topic. And there's a series of questions that have to be asked in the proper way, in the proper format for you to get that in. So, do you need a break to figure that—I mean, I'm not going to tell you what to do.

"[The Plaintiff's Counsel]: Yes, Your Honor.

"[The Defendants' Counsel]: Well, I would object to a break, Your Honor. This is the essence of the case.

"The Court: Okay.

"[The Defendants' Counsel]: I—that—I think that—

"The Court: Well.

"[The Defendants' Counsel]: This is a serious matter to both of the parties.

"The Court: I know it is. I know it is.

"[The Defendants' Counsel]: And so, there should not be a break for [the plaintiff's counsel] to figure out what should have been known before the lawsuit was filed.

"The Court: Well, and also before the case was brought, you know, what questions you're going to ask in what precise order at the key time in the examination. So, are you ready to go forward?

"[The Plaintiff's Counsel]: Your Honor, if I could have a ten minute break, I would appreciate it.

"The Court: But the problem is that with I think counsel is going to say is that—and I don't have any problem if you consult with [cocounsel], but I do have a problem if you consult with the witness. So, if I give you a few minutes to talk to Mr.—to have your conversation with [cocounsel], that's fine, but I really think it would be

best if the conversation occurs in the courtroom without the expert present. Would that be okay?

"[The Defendants' Counsel]: No, I would object to that, Your Honor, in that she did consult with [cocounsel] before asking that question. The witness is on. It's twenty of three.

"The Court: Hm-hm.

"[The Defendants' Counsel]: The witness should—also needs to be cross-examined today.

"The Court: Yes, I know.

"[The Defendants' Counsel]: So, the witness should be brought back out. The questioning should be continued. We should not take a break. We should not assist any party. We should not assist any party in doing what is an essential part of the case.

"The Court: Yes. I understand that's your position. We'll take a five minute break. [The plaintiff's counsel and cocounsel], please stay in the courtroom. Christie, I mean, Chelsea, is going to stay here to make sure that the expert stays in the hallway.

"[The Plaintiff's Counsel]: Yes, Your Honor.

"The Court: Okay? Thank you. All right.

"The Clerk: All rise. Court is now in recess.

(Recess/Resume)

\* \* \*

"[The Plaintiff's Counsel]: Dr. Griska, when we refer to the term of standard of care, what does that refer to?

"[The Witness]: Standard of care is that care that a similar radiologist who is competent would provide in a similar circumstance as the one we're having under discussion.

"[The Plaintiff's Counsel]: Okay. And when a radiologist observes a nodular density upon mammography what is the steps that a reasonable radiologist would take?

"[The Defendants' Counsel]: Objection to the form.

"The Court: Okay. Is your—are you asking for an expert opinion right now, or are you asking for generalized factual—

"[The Plaintiff's Counsel]: I was, at this point, I was asking generalized factual information.

"The Court: And is—is that because you are trying to have her explain what the standard of care is?

"[The Plaintiff's Counsel]: It's on the road to explaining that. Yes, Your Honor.

"The Court: Okay. So, I guess my concern here is that, you know, you had previously been asking questions that were foundational. Is that what you're doing?

"[The Plaintiff's Counsel]: Yes, Your Honor.

"The Court: I'm going to let you ask a few foundational questions, but you need to be very, very careful about whether this turns to the specific opinions in this case. Do you understand?

"[The Plaintiff's Counsel]: Yes, Your Honor.

"The Court: So, I'll give you a little bit of leeway.

"[The Plaintiff's Counsel]: Thank you, Your Honor.

"The Court: And I would ask the witness to please try very carefully to just answer the question that is asked and not to expound on your answer because counsel will ask you the next question.

"[The Witness]: Yes, Your Honor.

"The Court: Do you understand? Okay.

"[The Witness]: Please repeat.

"[The Plaintiff's Counsel]: Yes.

"Court Monitor: Would you like me to repeat it?

"[The Plaintiff's Counsel]: Yes, please.

(Question read by court monitor)

"[The Court Monitor]: And when a radiologist observes a nodular density upon mammography what is the steps that a reasonable radiologist would take?

"[The Witness]: When we see a nodular density, we need to—a radiologist needs to determine if there is something underlying that is potentially malignant . . . . So, additional views would need to be done to— to further evaluate that area.

"[The Plaintiff's Counsel]: Okay. And when you say additional views, can you explain that?

"[The Defendants' Counsel]: Objection to the form, Your Honor.

"The Court: Overruled. Go ahead.

"[The Witness]: The additional views are some of those that we discussed this morning and they could be compression spot views or views from a different direction or angle.

"[The Plaintiff's Counsel]: And in this case, what did Dr. Poole do?

"[The Witness]: He did one additional view.

"[The Plaintiff's Counsel]: Okay. And in your expert opinion was that one additional view sufficient to diagnose the nodular density?

"[The Defendants' Counsel]: Objection to the form, Your Honor.

"The Court: Sustained.

* * *

"[The Plaintiff's Counsel]: So, from this view can you determine where in the breast the calcifications are?

"[The Witness]: I can just say that they're in the top of the breast.

"[The Plaintiff's Counsel]: And how would—how would a radiologist determine a better location in the breast?

"[The Witness]: They need to—

"[The Defendants' Counsel]: Objection to the form, Your Honor.

"[The Plaintiff's Counsel]: I'll—I'll rephrase that.

"The Court: Okay. Thank you.

"[The Plaintiff's Counsel]: What would a radiologist have to do to better identify where in the breast the calcification was?

"[The Defendants' Counsel]: Objection to the form, Your Honor.

"The Court: Okay. Sustained.

"[The Plaintiff's Counsel]: If a patient presented to you with these calcifications, what steps would you take to determine where the calcifications were?

"[The Defendants' Counsel]: Objection to the form.

"The Court: Sustained."

The plaintiff's argument ignores the following additional direct testimony of Griska that took place after the portions of the examination on which the plaintiff relies. First, later in the afternoon of March 19, 2019, the following colloquy took place:

"[The Plaintiff's Counsel]: What is the standard of care in—in diagnosing micro calcifications?

"[The Defendant's Counsel]: Objection to the form.

"The Court: All right. I'll allow that one.

* * *

"[The Plaintiff's Counsel]: How is it that you are familiar with the prevailing standard of care?

"[The Witness]: Through my training and experience.

* * *

"[The Plaintiff's Counsel]: What is a standard of care for the physician confronting—confronted with—a similar area of concern?

"[The Defendant's Counsel]: Objection to the form.

"The Court: I'll allow it.

* * *

"[The Witness]: The standard of care would be first to identify the finding, and secondly, to locate the finding in two planes so that precise location could be identified. So, additional views would need to be performed, magnification views, and potentially other views with the breast and the machine, in a different location.

"[The Plaintiff's Counsel]: And when you say the machine at a different location you mean the mammography machine?

"[The Witness]: Yes.

"[The Plaintiff's Counsel]: Okay. And in this case, did Dr. Poole take additional films?

"[The Witness]: No.

* * *

"[The Plaintiff's Counsel]: Okay. And do you have an opinion within a reasonable medical certainty whether his fail—Dr. Poole's failure to take additional views fell below the standard of care?

"[The Defendant's Counsel]: Objection to the form.

"The Court: All right. Overruled.

"[The Witness]: Yes.

"[The Plaintiff's Counsel]: In what way?

"[The Witness]: The failure to take additional views, well first, he didn't identify the micro calcifications, and secondly, the failure to take additional views precluded the ability to establish the diagnosis and the location of the micro calcifications."

Similarly, on the following day, March 20, 2019, during the continued direct examination of Griska,[3] the following colloquy occurred:

"[The Plaintiff's Counsel]: Okay. Now, in September of [2012, was] there a generally accepted—accepted procedure for radiologists to follow when a patient presents with micro calcifications?

* * *

"[The Witness]: The principles and documentation of the how to evaluate and—and the basics of micro calcification analysis are in—were standard in 2012.

"[The Plaintiff's Counsel]: Okay. And when you say that they're standard in 2012, what do you mean by that?

"[The Witness]: I mean that the—the principles of how to evaluate the calcifications have not changed or what the possibility of [the calcifications are] representing has not changed.

"[The Plaintiff's Counsel]: Okay. And what is the accepted procedure for radiologists to follow when a patient presents with micro calcifications?

"[The Witness]: To do the magnification views and to view the calcifications in more than one direction.

"[The Plaintiff's Counsel]: And in 2012, did Dr. Poole follow that accepted procedure?

\* \* \*

"[The Witness]: No he did not.

\* \* \*

"[The Plaintiff's Counsel]: Okay. And did he meet the standard of care on September 21st, 2012, when he read the mammogram?

\* \* \*

"[The Witness]: No.

"[The Plaintiff's Counsel]: In what way?

"[The Witness]: The findings needed additional imaging evaluation, which were not performed. He did not do the magnification spot views, and he did not evaluate the calcifications to locate them in more than one projection."

With this record in mind, we turn to the applicable standard of review. "[B]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful. . . . Moreover, an evidentiary impropriety in a civil case is harmless only if we have a fair assurance that it did not affect the jury's verdict. . . . A determination of harm requires us to evaluate the effect of the evidentiary impropriety in the context of the totality of the evidence adduced at trial." (Citation omitted; internal quotation marks omitted.) *Klein* v. *Norwalk Hospital*, 299 Conn. 241, 254–55, 9 A.3d 364 (2010).

As noted previously in this opinion, we need not address whether the evidentiary rulings of which the plaintiff complains were improper, because the plaintiff has failed to demonstrate that those rulings were harmful to the presentation of her case at trial. Significantly, the plaintiff has not identified any relevant evidence that the court precluded the plaintiff from presenting during Griska's testimony. During Griska's testimony, the court did sustain the objections of the defendants' counsel to the form of certain questions asked by the plaintiff's counsel concerning the applicable standard of care and whether the defendants breached that standard of care. As the trial transcripts reflect, however, Griska did testify on two occasions later in the proceedings, over the objections of the defendants' counsel, which objections the court overruled, to the applicable standard of care and that Poole breached the relevant standard of care. Simply put, the plaintiff's unsubstanti-

ated claim that she "was precluded from presenting critical expert evidence in support of her claim" is contradicted by the record. Because the plaintiff has not shown any harm from the court's evidentiary rulings that are the subject of this appeal, her claim necessarily fails.

## II

The plaintiff's second claim arises from the trial court's order limiting the time for direct examination and cross-examination of the plaintiff's expert witness, Leopold. The plaintiff's claim on appeal is twofold. First, the plaintiff claims that the trial court abused its discretion by placing a time limit on the presentation of Leopold's testimony. Second, the plaintiff claims that the court's action constituted a denial of the right of access to the courts and, thus, violated article first, § 10, of the Connecticut constitution.[4] For the reasons that follow, we decline to review the plaintiff's claims.

The following additional facts and procedural history are relevant. During the trial proceedings on March 27, 2019, the following colloquy occurred:

"[The Defendants' Counsel]: So, it's [the plaintiff's] intention that he's a—a treating physician witness only?

"The Court: That's what I hear.

"[The Plaintiff's Counsel]: Yes, Your Honor.

"The Court: Okay. All right. So, with respect to Dr. Leopold, he was disclosed by the plaintiff on June 12th, 2017 as a 'subpoena-only expert' to testify as to the facts and opinions set forth in his reports and records. The disclosure also states that Dr. Leopold will discuss the radiation treatment the plaintiff received, and I quote, 'as well as the result of the delayed diagnosis of the breast cancer on treatment for [the plaintiff].' This testimony is I quote, 'expected to be based on review of [the plaintiff's] records and his treatment of [the plaintiff].' Because Dr. Leopold was disclosed as a treating fact witness expert only, he will only be allowed to testify as to an opinion or facts to which fair notice is given to the—in the disclosed medical records, pursuant to Practice Book § 13-4 (b) (2). To the extent [that the plaintiff] seeks to ask Dr. Leopold opinion questions concerning opinions that are not in the medical records, the defendants are not on fair notice, and, therefore, such questions should not be asked or elicited by counsel. Do you understand?

"[The Plaintiff's Counsel]: Yes, Your Honor.

"The Court: Okay. So, anything on Dr. Leopold? Okay. All right. So, now, with respect to the remainder of the day, what is going to happen this morning, [the plaintiff's counsel]?

"[The Plaintiff's Counsel]: Your Honor, I plan on calling Alisa Houldcroft, who is I believe in the hallway.

She was parking when we started this argument.

"The Court: Okay. So, you have one family witness today?

"[The Plaintiff's Counsel]: Yes.

"The Court: Only one?

"[The Plaintiff's Counsel]: Yes. And then—

"The Court: And that's it, and then Dr. Leopold?

"[The Plaintiff's Counsel]: Yes, Your Honor.

"The Court: And Dr. Leopold isn't coming until two, correct?

"[The Plaintiff's Counsel]: Yes, Your Honor.

"The Court: All right. So, here's what I want to say about Dr. Leopold. So, we only have Dr. Leopold for three hours today with a fifteen minute break, so it's really two hours and forty-five minutes.

"[The Plaintiff's Counsel]: Yes, Your Honor.

"The Court: That time will be split evenly between the plaintiff and the defendants because Dr. Leopold isn't coming back because you have to rest so we can turn to the defendants' case, as has been our plan all along, and as I have repeatedly told you. So, I would recommend that both parties think carefully about their direct and their cross-examination, and make sure that they don't waste any time on unnecessary questions. Like, do we have to spend a half an hour on his curriculum vitae, for example?

"[The Plaintiff's Counsel]: No, Your Honor.

"The Court: Okay. But if you do that, that will be on you because I will give you a deadline, and when that deadline comes, you will be done. We will take a break and I will turn to [the defendants' counsel], and I will say you get the rest of the time. And if she doesn't use the rest of the time, and there's time for rebuttal, then you'll have rebuttal. If not, we're done.

"[The Defendants' Counsel]: I—if I could, Your Honor. I think we need to shorten the amount of time that we're each given. Are you still having the show cause hearing at two?

"The Court: Oh, yeah, that's right.

"[The Defendants' Counsel]: And also we have a motion for directed verdict. So, I filed just a preliminary yesterday, because I don't want to give a roadmap to the plaintiff's counsel as to what they could possibly have done on their last day. So, we also need time for—

"The Court: Oh, I forgot about that.

"[The Defendants' Counsel]: —me to provide to you the motion for a directed verdict.

"The Court: Okay."

We now address each of the plaintiff's claims in turn.

A

The plaintiff first claims that the trial court abused its discretion by placing a time limit on the presentation of Leopold's testimony. The plaintiff makes this claim despite never raising to the trial court any objection to the time limit it imposed or identifying to the court any evidence she was unable to elicit from Leopold due to the time limit.

"As this court repeatedly has stated, we will not review an issue on appeal that was never properly raised in or decided by the trial court." *Billboards Divinity, LLC* v. *Commissioner of Transportation*, 133 Conn. App. 405, 411, 35 A.3d 395, cert. denied, 304 Conn. 916, 40 A.3d 783 (2012). "Practice Book § 60-5 provides in relevant part that [t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . . Indeed, it is the appellant's responsibility to present such a claim clearly to the trial court so that the trial court may consider it and, if it is meritorious, take appropriate action. That is the basis for the requirement that ordinarily [the appellant] must raise in the trial court the issues that he intends to raise on appeal. . . . For us [t]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge. . . . We have repeatedly indicated our disfavor with the failure, whether because of a mistake of law, inattention or design, to object to errors occurring in the course of a trial until it is too late for them to be corrected, and thereafter, if the outcome of the trial proves unsatisfactory, with the assignment of such errors as grounds of appeal." (Internal quotation marks omitted.) *Sturgeon* v. *Sturgeon*, 114 Conn. App. 682, 693, 971 A.2d 691, cert. denied, 293 Conn. 903, 975 A.2d 1278 (2009).

As previously noted, in the present case, the record shows that the plaintiff did not object to the court's imposition of a time limit before she started her examination of Leopold. Furthermore, at no time during or after Leopold's testimony did the plaintiff claim that the court's time limit prevented her from eliciting any evidence from Leopold. In fact, after Leopold concluded his testimony, the court inquired as to whether the plaintiff had any other evidence or testimony to present. In response, the plaintiff's counsel answered in the negative and did not claim that the court's imposition of a time limit on Leopold's testimony in any way impacted the presentation of her case. Thus, because we conclude that the plaintiff failed to preserve her claim that the court abused its discretion by placing a time limit on the presentation of Leopold's testimony, we decline to review the plaintiff's claim.[5]

B

The plaintiff next claims that the court's imposition of the time limit constituted a denial of her right of access to the courts and, thus, violated article first, § 10, of the Connecticut constitution. We decline to review the plaintiff's claim because it has been inadequately briefed.

We begin by setting forth the plaintiff's entire argument in her appellate brief regarding the constitutionality of the time limit imposed by the court: "But the court's draconian limitation of the time allowed for presentation of the plaintiff's case went beyond a mere abuse of discretion. It amounted to denying the plaintiff the right to present her case in any meaningful way. As such it constituted a denial of the right of access to the courts guaranteed by [article first, § 10], of the Connecticut constitution. This is so because lawsuits seeking damages for personal injuries caused by negligence were recognized at the time the constitution was adopted in 1818 and have been recognized ever since that time, and neither the legislature nor the court has provided an alternative to the judicial remedy in such cases. See *Gentile* v. *Altermatt*, 169 Conn. 267, 284–86, 363 A.2d 1 (1975); *Daily* v. *New Britain Machine Co.*, 200 Conn. 562, 585, 512 A.2d 893 (1986); *Zapata* v. *Burns*, 207 Conn. 496, 514–16, 542 A.2d 700 (1988); Ruben & Williams, *The Constitutionality of Basic Protection*, 1 Conn. L. Rev. 44, 46 n. 13 (1986). See generally, *Limiting the Length of Civil Trials?*, 2 No. 3 ABA J. E-Report 2 (2003)." (Footnote omitted.)

Initially, we note that the plaintiff raises this constitutional claim for the first time on appeal. It therefore was not properly preserved in the trial court. "We consider unpreserved claims of constitutional magnitude according to the requirements of [*State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 780–81, 120 A.3d 1188 (2015)] . . . ."[6] *Stacy B.* v. *Robert S.*, 165 Conn. App. 374, 381, 140 A.3d 1004 (2016). Nevertheless, the plaintiff's brief neither includes a *Golding* analysis nor requests extraordinary review of her claim under any other exception to the preservation rule. For this reason alone, the plaintiff has failed to adequately brief her constitutional claim and the claim is deemed abandoned. See, e.g., *State* v. *Tierinni*, 144 Conn. App. 232, 238, 71 A.3d 675 ("[A party's] failure to address the four prongs of *Golding* amounts to an inadequate briefing of the issue and results in the unpreserved claim being abandoned. . . . We will not engage in *Golding* . . . review on the basis of . . . an inadequate brief." (Internal quotation marks omitted.)), cert. denied, 310 Conn. 911, 76 A.3d 627 (2013).[7]

In addition, the plaintiff's appellate brief also does not provide any substantive analysis of why the court's action constituted a constitutional violation. Certainly, none of the cases on which she relies discusses time

limits imposed by a trial court, let alone considers whether such limits violate our state constitution. In the end, the plaintiff's argument consists of little more than a bare assertion that the court's time limit deprived her of her "right to present her case in any meaningful way."

"Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim receives only cursory attention in the brief without substantive discussion, it is deemed to be abandoned." (Internal quotation marks omitted.) *Billboards Divinity, LLC* v. *Commissioner of Transportation*, supra, 133 Conn. App. 412. Applying this principle, we conclude that the plaintiff has abandoned her unpreserved constitutional claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The complaint was withdrawn as to the defendants Jinnah A. Philips, Julie S. Gershon, Mandell & Blau, P.C., and Physicians for Women's Health, LLC, and they are not parties to this appeal. Stephen Reich, who was a fact witness before the trial court, filed an appearance for purposes of seeking a protective order regarding a notice of deposition. He is a named defendant, but is not involved in this appeal. Accordingly, for purposes of this opinion, we refer to Jefferson Radiology, P.C., and William S. Poole, collectively, as the defendants.

[2] The record contains conflicting evidence as to why an ultrasound was performed on the right breast and not the left breast.

[3] As previously noted in this opinion, the plaintiff argues that during her March 19, 2019 direct examination of Griska the court improperly precluded the plaintiff's counsel from discussing the court's rulings on the objections of the defendants' counsel to her questions with anyone other than her cocounsel. In making this argument, the plaintiff ignores the fact that Griska was still on direct examination when court adjourned for the day on March 19, 2019. Thus, her counsel had the opportunity before Griska resumed her direct testimony on March 20, 2019, to discuss the court's prior evidentiary rulings and Griska's continued testimony with anyone she liked, including Griska.

[4] The constitution of Connecticut, article first, § 10, provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

[5] Even if we were to assume that the court abused its discretion in imposing a time limit on the presentation of Leopold's testimony, we note that the plaintiff has failed to demonstrate any harm by failing to identify on appeal the relevant evidence that she would have sought to elicit during Leopold's testimony if additional time had been provided.

[6] "Under *Golding*, a [party] can prevail on a claim of constitutional error not preserved at trial only if the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the [party] of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the [party's] claim will fail. The appellate tribunal is free, therefore, to respond to the [party's] claim by focusing on whichever condition is most relevant in the particular circumstances." (Internal quotation marks omitted.) *In re Riley B.*, 203 Conn. App. 627, 636, 248 A.3d 756, cert. denied, 336 Conn. 943, 250 A.3d 40 (2021).

[7] We further note that the plaintiff did not affirmatively request in her brief that her claim concerning the court's imposition of a time limit be reviewed under the plain error doctrine. "[I]t is well established that this court [is not obligated to] apply the plain error doctrine when it has not

been requested affirmatively by a party . . . ." (Internal quotation marks omitted.) *Gartrell* v. *Hartford*, 182 Conn. App. 526, 540 n.12, 190 A.3d 904 (2018).

———————————————————