******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BRIAN O'TOOLE *v.* EYELETS FOR INDUSTRY, INC.
(AC 24729)

Gruendel, Keller and Borden, Js.

*Argued November 14, 2013—officially released February 25, 2014*

(Appeal from Superior Court, judicial district of
Waterbury, Pittman, J.)

*Eric R. Brown*, for the appellant (plaintiff).

*Opinion*

BORDEN, J. In this uncontested wrongful termination action, the plaintiff, Brian O'Toole, appeals from the trial court's sua sponte dismissal of his complaint for lack of subject matter jurisdiction. The plaintiff claims that the trial court improperly dismissed his complaint because the court had (1) concurrent jurisdiction to decide his claim brought pursuant to 38 U.S.C. § 4301 et seq., and (2) subject matter jurisdiction to adjudicate his common-law claims of breach of the covenant of good faith and fair dealing, and intentional infliction of emotional distress. We agree with the plaintiff, and therefore reverse the judgment of the trial court.

On January 29, 2003, the plaintiff served a copy of the complaint against the defendant, Eyelets For Industry, Inc. The defendant did not appear, and the court subsequently granted the plaintiff's motion against the defendant for default for failure to appear. Following a hearing in damages to the court, the court sua sponte dismissed the action for lack of subject matter jurisdiction. The plaintiff filed a motion to reargue, which the court denied. This appeal followed.

A more detailed account of the relevant procedural history is as follows. The first count alleged that the plaintiff is a member of the United States National Guard and, accordingly, he performs "service in the uniformed services," as defined in 38 U.S.C. § 4303 (13). The complaint further alleged that the plaintiff was employed by the defendant as a toolmaker until October, 2002, at which time his employment was terminated due to "lack of work." The complaint alleged that the reason cited for the plaintiff's termination of employment was pretextual, and that, in actuality, the defendant unlawfully terminated the plaintiff due to his military status, in violation of 38 U.S.C. § 4301 et seq., the Uniformed Services Employment and Reemployment Rights Act of 1994 (act). The second count of the complaint alleged that the defendant's unlawful termination of the plaintiff's employment constituted a breach of the covenant of good faith and fair dealing implied in the contractual employment relationship between the parties. The third count of the complaint alleged that the defendant's discriminatory conduct constituted intentional infliction of emotional distress.

The defendant failed to respond in any way to the plaintiff's complaint. Consequently, the plaintiff filed a motion for default for failure to appear against the defendant. The court granted this motion, and the case proceeded to a hearing in damages before the court. Following the hearing in damages, however, the court dismissed the complaint sua sponte for lack of subject matter jurisdiction. The court's memorandum of decision stated that the act "provides for a private right of

action for damages against a private employer. 38 U.S.C. § 4323 (a) (2) (A). The statute restricts jurisdiction over actions by an employee against a private employer to the United States District Courts. 38 U.S.C. § 4323 (b) (3). The only jurisdiction a state court may exercise is in the case of an action against a state when the state is an employer accused of discrimination. 38 U.S.C. § 4323 (b) (2). Accordingly, the court finds that it lacks subject matter jurisdiction and sua sponte dismisses the action." Subsequently, the plaintiff filed a motion to reargue in accordance with Practice Book § 11-11, which the court denied.

On appeal, the plaintiff claims that the court improperly dismissed his complaint because the act does not confer exclusive jurisdiction upon the federal courts. Accordingly, the plaintiff argues that the court had concurrent subject matter jurisdiction to adjudicate his claim under the act. Additionally, the plaintiff claims that even if the court lacked subject matter jurisdiction to adjudicate his claim under the act, it improperly dismissed the complaint with respect to counts two and three—breach of the covenant of good faith and fair dealing, and intentional infliction of emotional distress—because these are state common-law claims over which the court retained subject matter jurisdiction. We agree.

We begin by setting forth the standard of review for a motion to dismiss for lack of subject matter jurisdiction. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. . . . In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, 310 Conn. 616, 626, 79 A.3d 60 (2013).

We first consider the plaintiff's claim that the court improperly dismissed his wrongful termination claim, brought pursuant to the act, a federal statute enacted in 1994. "[The act] is the latest in a series of laws protecting veterans' employment and reemployment rights going back to the Selective Training and Service Act of 1940. [The act's] immediate predecessor was commonly

referred to as the Veterans' Reemployment Rights Act (VRRA), which was enacted . . . [in] 1974. In enacting [the act], Congress emphasized [its] continuity with the VRRA and its intention to clarify and strengthen that law. . . ." 20 C.F.R. § 1002.2. The act "protects individuals performing, or who performed, uniformed service in accordance with 38 U.S.C. [§ 4301 et seq.] from adverse employment discrimination on the basis of their uniformed service, and provides for their prompt restoration to civilian employment when they return to civilian life." Presidential Memorandum, July 19, 2012, 77 Fed. Reg. 43,699 (July 25, 2012); see also 38 U.S.C. § 4301.

Under the act, a protected individual who suffers an adverse employment action (or the United States bringing the claim on behalf of such individual) has the right to sue his or her employer (private or state). The act's enforcement provisions vary depending on who the parties are to the suit. The statute provides in relevant part: "(1) In the case of an action against a State (as an employer) or a private employer commenced by the United States, the district courts of the United States shall have jurisdiction over the action. (2) In the case of an action against a State (as an employer) by a person, the action may be brought in a State court of competent jurisdiction in accordance with the laws of the State. *(3) In the case of an action against a private employer by a person, the district courts of the United States shall have jurisdiction of the action.*" (Emphasis added.) 38 U.S.C. § 4323 (b). The plaintiff's claim was brought pursuant to the third provision.

Although the interpretation of the act's enforcement provisions is an issue of first impression for our courts, our analysis is guided by an expansive body of case law establishing well settled principles for distinguishing between statutes that confer exclusive versus concurrent jurisdiction. "The general principle of state-court jurisdiction over cases arising under federal laws is straightforward: state courts may assume subject-matter jurisdiction over a federal cause of action absent provision by Congress to the contrary . . . . This rule is premised on the relation between the States and the National Government within our federal system. See The Federalist No. 82 (Hamilton). . . . It is black letter law . . . that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action." (Citations omitted; footnote omitted.) *Gulf Offshore Co.* v. *Mobil Oil Corp.*, 453 U.S. 473, 477–78, 101 S. Ct. 2870, 69 L. Ed. 2d 784 (1981). Thus, "[t]o give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest state courts of their presumptively concurrent jurisdiction." *Yellow Freight System, Inc.* v. *Donnelly*, 494 U.S. 820, 823, 110 S. Ct. 1566, 108 L. Ed. 2d 834 (1990); see *Burt* v. *Titlow*, U.S. , 134 S. Ct. 10, 15, 187 L. Ed. 2d 348 (2013);

*Foxhall Realty Law Offices, Inc.* v. *Telecommunications Premium Services, Ltd.*, 156 F.3d 432, 435 (2d Cir. 1998); *State* v. *Sebastian*, 243 Conn. 115, 140–41, 701 A.2d 13 (1997), cert. denied, 522 U.S. 1077, 118 S. Ct. 856, 139 L. Ed. 2d 756 (1998); *Shea* v. *First Federal Savings & Loan Assn. of New Haven*, 184 Conn. 285, 289–90, 439 A.2d 997 (1981). Exclusive federal jurisdiction can be created expressly or by implication. See *Mims* v. *Arrow Financial Services, LLC*,    U.S.   , 132 S. Ct. 740, 748, 181 L. Ed. 2d 881 (2012); *Stratford* v. *Bridgeport*, 173 Conn. 303, 310–11, 377 A.2d 327 (1977).

In light of this precedent, we presume that state courts have concurrent jurisdiction to adjudicate claims brought pursuant to the act. The question becomes, then, whether Congress defeated this presumption by expressly or impliedly creating exclusive federal jurisdiction. To resolve this question, we must apply the principles of statutory interpretation. Ordinarily, our analysis would begin with the plain meaning rule, set forth in General Statutes § 1-2z. Because the act is a federal statute, however, "principles of comity and consistency require us to follow the plain meaning rule for the interpretation of federal statutes because that is the rule of construction utilized by the United States Court of Appeals for the Second Circuit." (Internal quotation marks omitted.) *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission*, 285 Conn. 381, 401, 941 A.2d 868 (2008).

Before turning to the task of determining whether the act's language is plain and unambiguous, however, we recognize that this act does not come to us unadorned by prior interpretation. In *Tsang* v. *Kan*, 173 F.2d 204 (9th Cir.), cert. denied, 337 U.S. 939, 69 S. Ct. 1515, 93 L. Ed. 1744 (1949), the United States Court of Appeals for the Ninth Circuit considered whether the defendant had the right to sue his private employer in a California state court after he was denied reinstatement to his employment position, in violation of the reemployment provisions of the Selective Training and Service Act of 1940 (STSA)—the original progenitor of the act. Under the enforcement provision of the STSA, "the district court of the United States for the district in which such private employer maintains a place of business *shall* have power . . . to specifically require such employer to comply with [the statutory] provisions . . . ." (Emphasis added.) 50 U.S.C. § 308 (e) (1940). The court referred to the United States Supreme Court's decision in *Claflin* v. *Houseman*, 93 U.S. 130, 23 L. Ed. 833 (1876), with respect to the principle that "[t]he mere giving of . . . jurisdiction to the federal courts does not thereby exclude that of the state courts." *Tsang* v. *Kan*, supra, 205. Accordingly, the court concluded that state courts retain their concurrent jurisdiction under the STSA. Id., 206. Because the act is an extension of the STSA, and indeed, was enacted "to clarify and strengthen that law"; 20 C.F.R. § 1002.2; we regard this

case as persuasive authority that the act does not confer exclusive federal jurisdiction.

We now return to an examination of the language of the act and its interpretation under the guidance of the United States Court of Appeals for the Second Circuit. "[W]e begin with the text of the statute to determine whether the language at issue has a plain and unambiguous meaning. . . . A particular statute's plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute. . . . [W]e attempt to ascertain how a reasonable reader would understand the statutory text, considered as a whole. . . . If we can ascertain the plain meaning of the statutory text by examining it in the context of the statute as a whole, we need proceed no further. If, however, the plain meaning is ambiguous, we may consult other sources. Extrinsic materials have a role in statutory interpretation . . . to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms. . . . We turn to the legislative history only when the plain statutory language is ambiguous or would lead to an absurd result." (Citations omitted; internal quotation marks omitted.) *Louis Vuitton Malletier S.A.* v. *LY USA, Inc.*, 676 F.3d 83, 108 (2d Cir. 2012).

We will consult the legislative history for two reasons. First, we conclude that the act is not plain and unambiguous. It does not expressly state that federal courts have exclusive jurisdiction. In *Tafflin* v. *Levitt*, 493 U.S. 455, 471, 110 S. Ct. 792, 107 L. Ed. 2d 887 (1990) (Scalia, J., concurring), Justice Scalia identified three phrases typically used by Congress to expressly confer exclusive federal jurisdiction: "In the standard fields of exclusive federal jurisdiction, the governing statutes specifically recite that suit may be brought only in federal court . . . that the jurisdiction of the federal courts shall be exclusive . . . or indeed even that the jurisdiction of the federal courts shall be exclusive of the courts of the States . . . ." (Citations omitted; internal quotation marks omitted.) Id. (citing various federal statutes using this specific language to confer expressly exclusive federal jurisdiction). The act does not utilize any of this paradigmatic language, but instead, states that "the district courts of the United States shall have jurisdiction of the action." 38 U.S.C. § 4323 (b) (3). Accordingly, the statute does not plainly and unambiguously confer exclusive federal jurisdiction.

Second, reading the act as a whole, a reasonable reader would find that the plain statutory language yields an absurd result. For instance, as to those claims brought pursuant to 38 U.S.C. § 4323 (b) (1) and (3), the statute provides that "the *district courts of the United States shall* have jurisdiction . . . ." (Emphasis

added.) By contrast, pursuant to 38 U.S.C. § 4323 (b) (2), claims brought by an individual against a state employer "*may* be brought in a *State court* of competent jurisdiction in accordance with the laws of the State." (Emphasis added.) Generally, "when the same [statute] uses both may and shall, the normal inference is that each is used in its usual sense—the one act being permissive, the other mandatory." (Internal quotation marks omitted.) *Weinstein* v. *Albright*, 261 F.3d 127, 137 (2d Cir. 2001); see also *Jama* v. *Immigration & Customs Enforcement*, 543 U.S. 335, 346, 125 S. Ct. 694, 160 L. Ed. 2d 708 (2005). If this "normal inference" were applicable to the act, then 38 U.S.C. § 4323 (b) (3) would effectively confer exclusive federal jurisdiction because the word "shall" would require aggrieved parties to bring suit in federal court.

Here, however, this inference leads to an absurd result. Specifically, reading the word "may" in 38 U.S.C. § 4323 (b) (2) as permitting an aggrieved individual to sue a state employer in either state or federal court would violate the doctrine of sovereign immunity set forth in the eleventh amendment to the United States constitution. See U.S. Const., amend. XI. This doctrine limits judicial authority under article three of the United States constitution and, accordingly, bars an individual from suing a state in federal court on grounds not set forth within the fourteenth amendment to the United States constitution. See *Seminole Tribe of Florida* v. *Florida*, 517 U.S. 44, 59–72, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996). Thus, as a matter of law, the word "may" in 38 U.S.C. § 4323 (b) (2) of the act is not a permissive term, thereby defeating the normal inference that when "may" and "shall" appear in the same statute, the former is permissive and the latter mandatory. We thus examine the act's legislative history to illuminate the meaning of 38 U.S.C. § 4323 (b) (3).

The legislative history of the act demonstrates that Congress did not intend to confer exclusive federal jurisdiction. The act was amended in 1998 to respond to concerns that it violated the doctrine of sovereign immunity, in light of the United States Supreme Court's decision in *Seminole Tribe of Florida* v. *Florida*, supra, 517 U.S. 44. See *Townsend* v. *University of Alaska*, 543 F.3d 478, 482–84 (9th Cir. 2008) (discussing legislative history of the act amendments of 1998), cert. denied, 556 U.S. 1166, 129 S. Ct. 1907, 173 L. Ed. 2d 1058 (2009); H.R. 3213, 105th Cong. (1998). In the United States House of Representatives, Representative Jack Quinn stated that "[t]his bill would substitute the United States for an individual veteran as the plaintiff in enforcement actions in cases where the Attorney General believes that a State has not complied with [the act]. . . . *Individuals not represented by the Attorney General would be able to bring enforcement actions in State court*." (Emphasis added.) 144 Cong. Rec. at H1398 (1998). He further stated, "[i]n summary . . . we are looking at

State employees to be granted the *same rights* under [the act] as any other veteran or member of the Guard and Reserve *who works in the private sector* or the Federal Government." (Emphasis added.) Id. Because Congress expressly stated that state employees have the right to sue their employers in state court, and that the intent of the 1998 amendments was to grant state employees the same rights as employees in the private sector, it follows that employees have the right to sue their private employers in state court under the act.

Our conclusion is also consistent with the United States Supreme Court's policy that the STSA "is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need." *Fishgold* v. *Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285, 66 S. Ct. 1105, 90 L. Ed. 1230 (1946). The Supreme Court further stated that courts must "construe the separate provisions of the [STSA] as parts of an organic whole and give each as liberal a construction for the benefit of the veteran as a harmonious interplay of the separate provisions permits." Id.; see also *Feore* v. *North Shore Bus Co.*, 161 F.2d 552, 553–54 (2d Cir. 1947) (STSA must be liberally construed "to effectuate the congressional purpose of insuring that the returning veteran be not penalized employmentwise because of his military service"). This policy of liberal construction is applicable to the act, to the extent that, in enacting the act, "Congress . . . emphasized that Federal laws protecting veterans' employment and reemployment rights for the past fifty years had been successful and that the large body of case law that had developed under those statutes remained in full force and effect, to the extent it is consistent with [the act]." 20 C.F.R. § 1002.2. It follows, then, that in light of prior case law broadly interpreting the STSA as conferring concurrent jurisdiction, such as *Tsang* v. *Kan*, supra, 173 F.2d 206, the act must also be construed liberally to permit concurrent jurisdiction.

Finally, the court also improperly dismissed the plaintiff's second and third counts. They are simply state common-law claims over which our courts have long exercised subject matter jurisdiction.

The judgment is reversed and the case is remanded for a new hearing in damages and for further proceedings according to law.

In this opinion the other judges concurred.