******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# HIGHLAND STREET ASSOCIATES ET AL. *v.* COMMISSIONER OF TRANSPORTATION ET AL.
## (AC 44330)

Bright, C. J., and Cradle and DiPentima, Js.

*Syllabus*

The plaintiffs, two entities that, respectively, owned a parcel of real property and a billboard located on that property, sought a declaratory ruling from the trial court pursuant to statute (§ 4-175) following the failure of the defendant Department of Transportation to act on their petition for a declaratory ruling that they could replace the billboard's existing support structure. The billboard, which was located in a residential zone within 660 feet of a federal highway and had been erected prior to 1968, was a nonconforming grandfathered sign pursuant to the federal Highway Beautification Act of 1965 (23 U.S.C. § 131 et seq.) and related state statute (§ 13a-123). In order to replace the billboard's support structure, the plaintiffs acknowledged that they would need to remove the existing billboard for a short period of time. The department denied the plaintiff's application for a permit to replace the support structure, as a new sign was not permitted pursuant to 23 U.S.C. §131 et seq. and § 13a-123. The trial court rendered judgment for the plaintiffs, holding that the proposed replacement of the billboard's existing support system constituted permissible maintenance and repair. The court further held that, pursuant to a zoning statute (§ 8-2), the sign's preexisting noncon-forming use was a vested right with which the department and the defendant Commissioner of Transportation could not interfere. On the defendants' appeal to this court, *held* that the trial court erred in holding that replacing the billboard's existing support structure constituted maintenance and repair pursuant to federal and state law: although, as a grandfathered nonconforming sign, the billboard could continue to exist, even though it did not comply with state regulations, and it could be maintained and repaired without losing its grandfathered status, replacing the billboard's existing support system was not customary maintenance and repair because such construction would substantially change the billboard and constitute the erection of a new billboard, and all other jurisdictions confronted with similar facts have held that such structural replacement constitutes the erection of a new sign and, thus, the termination of the preexisting sign's nonconforming usage; more-over, this court's determination that reconstructing a billboard with a new support structure did not constitute customary repair and mainte-nance was consistent with the purpose of 23 U.S.C. § 131 et seq., as the policy behind the act was for billboards located in certain zones along federal highways to cease to exist after they had reached the natural end of their lives; furthermore, the court's reliance on § 8-2, which restricts municipal zoning authorities from interfering with nonconform-ing uses, was misplaced, as that statute applies only in a zoning context and this case was governed by federal and state law and regulations, and, contrary to the plaintiffs' claim, there was no taking of a vested property right, as the defendants did not direct the plaintiffs to remove the billboard.

Argued January 11—officially released June 21, 2022

*Procedural History*

Action for a judgment declaring, inter alia, that the plaintiffs may replace the existing support structure for a certain nonconforming outdoor advertising sign, brought to the Superior Court in the judicial district of Fairfield and tried to the court, *Hon. Dale W. Radcliffe*, judge trial referee; judgment for the plaintiffs, from which the defendants appealed to this court. *Reversed*;

*judgment directed.*

*Anthony C. Famiglietti*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Clare Kindall*, solicitor general, for the appellants (defendants).

*Joel Z. Green*, with whom was *Linda Pesce Laske*, for the appellees (plaintiffs).

*Opinion*

BRIGHT, C. J. In this declaratory judgment action, the defendants, the Commissioner of Transportation (commissioner) and the Department of Transportation (department), appeal from the judgment of the trial court rendered in favor of the plaintiffs, Highland Street Associates (Highland Street) and Barrett Outdoor Communications, Inc. (Barret Outdoor). On appeal, the defendants claim that the court erred in concluding that the replacement of a billboard's existing trestle support structure with a monopole[1] constituted maintenance and repair under the Highway Beautification Act of 1965 (act), 23 U.S.C. § 131 et seq., and General Statutes § 13a-123. We agree and, accordingly, reverse the judgment of the trial court.

The following facts, which are undisputed, and procedural history are relevant to our resolution of this appeal. Highland Street owns a parcel of real property located at 215 Webster Street in Bridgeport. Barrett Outdoor owns and operates a billboard that is located on the Webster Street property. The billboard consists of two sign faces that sit atop a trestle support structure that is affixed to the ground. Advertising messages are displayed on the sign faces and are changed frequently. The billboard is located in a residential zone and is also within 660 feet of Interstate 95, a federal highway. A permit for the billboard was issued by the department on May 9, 1966.[2] Although a new billboard would not be a permitted use at this location, because the billboard at issue was erected prior to 1968, it is undisputed that it is a nonconforming grandfathered sign under the act and § 13a-123.

Recently, Barrett Outdoor decided that it wanted to replace the billboard's existing trestle support structure with a new monopole. To that end, in November, 2017, Barrett Outdoor submitted an "Application for Outdoor Advertising Permit" to the department.[3] The application identified the billboard as a "[p]re-existing structure" and stated that "[t]he pole of the structure needs to be replaced." Dennis Buckley, a Bridgeport zoning official, signed off on the plaintiffs' application, attesting that "the structure described [in the application] is in accordance with all local zoning regulations and ordinances concerning off-premise advertising."

On January 5, 2018, the department denied the plaintiffs' request for a new permit, stating: "The existing sign . . . does have nonconforming status and will be allowed to be maintained and continued pursuant to [§] 13a-123-12 of the Regulations of Connecticut State Agencies and 23 C.F.R. § 750.707. However, to maintain nonconforming status, a billboard structure must remain 'substantially the same.' Anything beyond customary maintenance and repair, *such as the replacement of the sign with a new structure*, is not permissi-

ble under [f]ederal and [s]tate law." (Emphasis added.)

Thereafter, the plaintiffs sent a letter to the department asking it to reconsider the denial of their application because "the present use of the premises at 215 Webster Street . . . for an outdoor advertising structure while nonconforming to the Zoning Regulations of the City of Bridgeport, is a legally and permitted use of the premises at 215 Webster Street . . . [and] there is no contemplated change in the use of the property by virtue of the application including the replacement of the structure supporting the existing outdoor advertising sign which, once again, is specifically permitted under Connecticut law." The department denied that request, stating that the plaintiffs' application did not "request customary maintenance and repair" of the billboard because "[the plaintiffs are] seeking to remove the existing sign structure and replace it with an entirely new structure." In denying the plaintiffs' request for reconsideration, the department specifically relied on this court's decision in *Billboards Divinity, LLC* v. *Commissioner of Transportation*, 133 Conn. App. 405, 35 A.3d 395, cert. denied, 304 Conn. 916, 40 A.3d 783 (2012), wherein, according to the department's summary of the case, this court defined the phrase " 'maintenance and repair' to mean 'actions taken to perpetuate or to restore a *presently existing* sign.' " (Emphasis in original.)

Pursuant to General Statutes § 4-176,[4] the plaintiffs then petitioned the department for a declaratory ruling that they could replace the billboard's existing trestle support structure with a new monopole. After the department failed to act on the plaintiffs' petition, the plaintiffs brought a declaratory judgment action in the Superior Court, pursuant to General Statutes § 4-175,[5] seeking a declaratory ruling that they could replace the billboard's existing support structure.

A one day court trial was held on March 10, 2020.[6] At the trial, Bruce Barrett, the president of Barrett Outdoor, testified on direct examination that Barrett Outdoor submitted an application for a new permit because "[w]e were being very protective, we wanted to make sure if we disassembled this sign and replaced it that midstream the [department] wouldn't tell us that we needed a permit." Barrett also testified on direct examination that, in order to replace the billboard's existing trestle support structure with a new monopole, the existing sign would need to come down for "a week or two weeks whatever time." On cross-examination, Barrett stated that, once the existing support structure had been replaced with the monopole, "[t]he [billboard's] support structure will look different."

Matthew Geanacopoulos, a department employee, testified that an application for a permit was required only when a sign owner was "erecting a new structure," and that, if a sign owner simply wanted to perform

maintenance or repair on a billboard, the owner did not need to submit anything to the department. Geanacopoulos also testified that the department had denied the plaintiffs' application because the plaintiffs had "applied for a new permit, and their application said they were going to replace their existing sign," a request that the department "interpret[ed] . . . as a new structure, new sign" which was not allowed under state and federal law.

In a decision dated September 8, 2020, the court, *Hon. Dale W. Radcliffe*, judge trial referee, rendered judgment for the plaintiffs. The court held that (1) the construction of a monopole in place of the billboard's existing trestle support system constituted maintenance and repair because "the outdoor advertising sign is slated to remain in the same location, will contain the same dimensions, and will be adjacent to the same interstate highway," and (2) pursuant to General Statutes § 8-2, the billboard's preexisting nonconforming use was a vested right with which the department could not interfere. The court also held that this court's decision in *Billboards Divinity, LLC* v. *Commissioner of Transportation*, supra, 133 Conn. App. 418–19, was distinguishable from the plaintiff's case because the property owners in *Billboards Divinity, LLC*, "desired to erect two new billboards, after two nonconforming billboards were removed from the site," whereas in the present case, "the issue involves an existing outdoor advertising sign, which has not been discontinued, or abandoned." The defendants then appealed.

We begin by setting forth the applicable standard of review and principles of law that guide our analysis. Resolving the defendants' appeal requires us to interpret and apply the provisions of the act and § 13a-123. "With respect to the construction and application of federal statutes, principles of comity and consistency require us to follow the plain meaning rule for the interpretation of federal statutes because that is the rule of construction utilized by the United States Court of Appeals for the Second Circuit. . . . If the meaning of the text is not plain, however, we must look to the statute as a whole and construct an interpretation that comports with its primary purpose and does not lead to anomalous or unreasonable results." (Citation omitted; internal quotation marks omitted.) *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission*, 285 Conn. 381, 400–401, 941 A.2d 868 (2008); see also *O'Toole* v. *Eyelets for Industry, Inc.*, 148 Conn. App. 367, 373, 86 A.3d 475 (2014) (plain meaning rule, as set forth in General Statutes § 1-2z, does not apply when interpreting federal statutes).

Similarly, as to the construction and application of state statutes, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a

reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . Furthermore, [t]he legislature is always presumed to have created a harmonious and consistent body of law . . . [so that] [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction. . . . Because issues of statutory construction raise questions of law, they are subject to plenary review on appeal." (Internal quotation marks omitted.) *Robinson* v. *Tindill*, 208 Conn. App. 255, 264, 264 A.2d 1063, cert. denied, 340 Conn. 917, 265 A.3d 926 (2021).

"The [act] . . . was enacted to exert federal control over the erection and maintenance of outdoor advertising signs, displays and devices located within 660 feet of the nearest edge of the right-of-way and visible from the traveled portion of interstate and federal-aid primary highways. . . . The act requires states to enter into agreements with the federal government to carry out the provisions and the goals of the act or else risk the loss of a portion of their federal highway funding. . . .

"Section (d) of the act provides [in relevant part]: In order to promote the reasonable, orderly and effective display of outdoor advertising while remaining consistent with the purposes of this section, signs, displays, and devices whose size, lighting and spacing, consistent with customary use [as] is to be determined by agreement between the several [s]tates and the Secretary [of Transportation], may be erected and maintained within six hundred and sixty feet of the nearest edge of the right-of-way within areas adjacent to the Interstate and primary systems which are zoned industrial or commercial under authority of [s]tate law, or in unzoned commercial or industrial areas as may be determined by agreement between the several [s]tates and the Secretary [of Transportation]. The [s]tates shall have full authority under their own zoning laws to zone areas for commercial or industrial purposes, and the actions of the States in this regard will be accepted for the purposes of this [a]ct. Whenever a bona fide [s]tate, county, or local zoning authority has made a determination of customary use, such determination will be accepted in lieu of controls by agreement in the zoned commercial and industrial areas within the geographical jurisdiction of such authority. . . . Section (d), therefore, clearly limits the erection of signs falling within the provisions of the act solely to areas that are

zoned by state or local authorities for commercial or industrial purposes . . . .

"The federal regulations promulgated in support of the act contain a provision addressing the issue of non-conforming signs, which it defines as a sign which was lawfully erected but does not comply with the provisions of [s]tate law or [s]tate regulations passed at a later date or later fails to comply with [s]tate law or [s]tate regulations due to changed conditions. . . . The regulation authorizes each state to include in its agreement with the federal government a so-called grandfather clause to allow for the continuation of nonconforming signs. . . . The clause only provides for the continuance of a sign at its particular location for the duration of its normal life subject to customary maintenance. . . .

"The federal regulations also set forth criteria necessary to maintain and continue a nonconforming sign. For example, the sign must remain substantially the same as it was on the effective date of the [s]tate law or regulations. . . . The regulation authorizes each state to develop its own criteria to determine when customary maintenance ceases and a substantial change has occurred which would terminate nonconforming rights. . . . Further, a nonconforming sign can only continue as long as it is not destroyed, abandoned, or discontinued. . . .

"Connecticut entered into an agreement with the federal government pursuant to the act, which led to the enactment of . . . § 13a-123. Section 13a-123 (a) provides in relevant part: The erection of outdoor advertising structures, signs, displays or devices within six hundred sixty feet of the edge of the right-of-way, the advertising message of which is visible from the main traveled way of any portion of the National System of Interstate and Defense Highways, hereinafter referred to as interstate highways, the primary system of federal-aid highways or other limited access state highways, is prohibited except as otherwise provided in or pursuant to this section . . . . Section 13a-123 (c) authorizes the commissioner . . . to promulgate regulations for the control of outdoor advertising structures, signs, displays and devices along interstate highways, the primary system of federal-aid highways and other limited access state highways. Such regulations shall be as, but not more, restrictive than the controls required by Title I of the [act] and any amendments thereto with respect to the interstate and primary systems of federal-aid highways . . . . Section 13a-123 (e) provides in relevant part: Subject to regulations adopted by the commissioner and except as prohibited by state statute, local ordinance or zoning regulation signs, displays and devices may be erected and maintained within six hundred sixty feet of primary and other limited access state highways in areas which are zoned for industrial or

commercial use under authority of law . . . .

"Among the regulations promulgated by the commissioner in accordance with § 13a-123 (d), is a grandfather clause of the type authorized by 23 C.F.R. § 750.707 (c). . . . The regulation[s] [also define] erect to mean to construct, build, raise, assemble, place, affix, attach, create, paint, draw, or in any other way bring into being or establish, *but it shall not include* any of the foregoing activities when performed as an incident to the change of advertising message or *customary maintenance or repair* of a sign or sign structure." (Citations omitted; emphasis added; footnote omitted; internal quotation marks omitted.) *Billboards Divinity, LLC* v. *Commissioner of Transportation*, supra, 133 Conn. App. 414–17.

On appeal, the defendants claim that the court erred when it concluded that replacing the billboard's existing support structure with a new monopole constituted customary repair and maintenance. We agree.

It is undisputed that the billboard in question is a grandfathered nonconforming sign, given that, although it is located in an area zoned for residential use, it existed prior to the enactment of the applicable state regulations. As a grandfathered nonconforming sign, the billboard is allowed to continue to exist even though it does not comply with state regulations. 23 C.F.R. § 750.707 (d); Regs., Conn. State Agencies § 13a-123-12. The billboard also can be maintained and repaired without losing its grandfathered status. 23 C.F.R. § 750.707 (d) (5); Regs., Conn. State Agencies § 13a-123-2 (b). Any alteration beyond maintenance and repair, however, terminates the continuation of the billboard's grandfathered status and transforms the billboard into a new sign that must comply with the state regulations. See *Billboards Divinity, LLC* v. *Commissioner of Transportation*, supra, 133 Conn. App. 416. Specifically, although § 13a-123-4 of the Regulations of Connecticut State Agencies prohibits the erection of new signs in protected areas, § 13a-123-12 permits signs erected prior to March 19, 1968, to remain in place as nonconforming uses, and § 13a-123-2 excludes from the definition of " 'erect,' " "activities when performed as an incident to the change of advertising message or customary maintenance or repair of a sign or sign structure." Consequently, consistent with federal law, the plaintiffs' billboard maintains its grandfathered status so long as the plaintiffs' activities related to it are limited to customary maintenance and repair of the sign or the sign structure.

In *Billboards Divinity, LLC* v. *Commissioner of Transportation*, supra, 133 Conn. App. 418, this court specifically addressed the meaning of " 'customary maintenance and repair' " as used in the federal and state regulations. In *Billboards Divinity, LLC*, the plaintiff filed an application with the department for a

permit to reconstruct two grandfathered nonconforming billboards as to which its tenant had cancelled the permits and removed from the property. Id., 408. The department denied the plaintiff's application because the property where the billboards were to be rebuilt was a residential zone and, thus, a prohibited area. Id., 408–409. The plaintiff appealed, claiming that it had a right to continue with a nonconforming use of its property and that the tenant's removal of the previous billboards had not extinguished that use. Id., 410.

This court determined that, "[p]ursuant to the statutory and regulatory scheme set forth [in the act and state law] . . . the plaintiff's argument has merit only if its erection of new billboards qualifies as 'customary maintenance or repair' of the prior nonconforming signs." Id., 418. Noting that " '[c]ustomary maintenance and repair' is not defined in the regulations [and] therefore, the term must be construed according to its commonly approved usage," the court held that "[t]he term 'maintenance and repair' as used in reference to nonconforming signs logically refers to actions taken to perpetuate or to restore a *presently existing sign*." (Emphasis added.) Id. Given that interpretation, the court held that the plaintiff's proposed construction of new billboards to replace the previously existing billboards was not maintenance and repair because, "rather than seeking to make repairs to or to maintain an existing, nonconforming billboard, the plaintiff's application sought a permit to erect two wholly new signs." Id., 418–19.

The plaintiffs argue, as the trial court held, that *Billboards Divinity, LLC*, is distinguishable from the present case because, in *Billboards Divinity, LLC*, the billboards had been removed and the permits cancelled, whereas here, the billboard is still standing and the permit remains valid. We conclude that any factual differences between the present case and *Billboards Divinity, LLC*, are not material to our analysis. It is undisputed in the present case that the existing billboard and support structure must be taken down in order to *replace* the billboard's existing trestle support structure with the new monopole. When the billboard is put back up, *now supported by the new monopole*, the billboard is a new sign. See id. The erection of a new sign, even when that construction is done to replace a previously existing billboard and even though the owner has never stated an intention to abandon the permit to use a sign at that location, is not maintenance and repair because such construction is not an action taken to "perpetuate or to restore a presently existing sign," given that the "presently existing sign" no longer exists. Id. Thus, as was the case in *Billboards Divinity, LLC*, "rather than seeking to make repairs to or to maintain an existing, nonconforming billboard, the plaintiff's application sought a permit to erect [a] wholly new [billboard]." Id., 419. Such construction is not mainte-

nance and repair according to that term's commonly understood usage, and the trial court therefore erred in holding that replacing the billboard's existing support structure with a new monopole was maintenance and repair under the act and § 13a-123.

Moreover, replacing the billboard's existing support system with a new monopole is not customary maintenance and repair because such construction would substantially change the billboard. Under the federal regulations, a billboard can be maintained and repaired only to the extent that the sign remains substantially the same as it was when the sign was grandfathered in as a nonconforming sign. See 23 C.F.R. § 750.707 (d) ("[i]n order to maintain and continue a nonconforming sign . . . (5) [t]he sign must remain substantially the same as it was on the effective date of the State law or regulations"). Reconstructing the billboard in the present case with a monopole in place of its existing support structure would result in a billboard that is substantially different in how it is constructed from the grandfathered nonconforming billboard. Indeed, the president of Barrett Outdoor testified at trial that replacing the trestle support structure with a monopole involved disassembling the sign, with the end result being that the billboard's support structure would look different after the trestle structure was replaced with a monopole. Thus, because replacing the billboard's existing support system with a monopole would result in a substantially different sign, such construction is not customary maintenance and repair.

We also are not persuaded by the plaintiffs' argument that the billboard will be substantially the same after the trestle support structure is replaced with a monopole because the dimensions, location, and positioning of the sign portion of the billboard structure will be unchanged. The plaintiffs have not cited, nor have we found, any cases from Connecticut or any other jurisdictions in which a property owner was permitted to maintain their nonconforming use by replacing a billboard's existing support structure with a new and different support structure.[7] To the contrary, our research has revealed that all of the other jurisdictions that have been confronted with facts similar to those here have held that replacing a billboard's existing support structure with a new support structure goes beyond maintenance and repair and instead constitutes the erection of a new sign, at which point the preexisting sign's nonconforming use is terminated and the relevant state regulations relating to the construction of the sign apply. See, e.g., *Tucson* v. *Whiteco Metrocom, Inc.*, 194 Ariz. 390, 397–98, 983 P.2d 759 (App. 1999) (replacement of billboard's existing twin I beam support structure with new unipole structure was not reasonable repair); *U.S. Outdoor Advertising Co.* v. *Indiana Dept. of Transportation*, 714 N.E.2d 1244, 1255 (Ind. App. 1999) (reconstructing billboard's existing support system by

removing wooden supports and replacing them with steel supports was not maintenance and repair); *Meredith Outdoor Advertising, Inc.* v. *Iowa Dept. of Transportation*, 648 N.W.2d 109, 118 (Iowa 2002) (increase in billboard's size and *number of posts supporting sign* was "too extensive to constitute de minimis changes or a mere continuation of the existing sign"); *Zanghi* v. *State*, 204 App. Div. 2d 313, 314, 611 N.Y.S.2d 263 (1994) (reerecting billboard that tenant had removed constituted "change in existing use" and terminated sign's nonconforming use); *Park Outdoor Advertising Co.* v. *Commonwealth Dept. of Transportation*, 86 Pa. Commw. 506, 508, 510, 485 A.2d 864 (1984) (new billboard was erected when wooden frame and two support posts were changed to metal frame and one support post); cf. *State Dept. of Roads* v. *World Diversified, Inc.*, 254 Neb. 307, 315, 576 N.W.2d 198 (1998) (converting existing billboard into electronic billboard constituted maintenance and repair when "updates occurred upon the original frame of the sign [and] the sign remained in the same location *on the same support posts*" (emphasis added)). Significantly, we have located no cases that have held to the contrary since this court noted in *Billboards Divinity, LLC*, that "other jurisdictions have found that once nonconforming signs are removed completely, or *they have been repaired substantially or altered in some way*, any right to the continuation of the nonconformity terminates." (Emphasis added.) *Billboards Divinity, LLC* v. *Commissioner of Transportation*, supra, 133 Conn. App. 419. Consistent with the holdings in other jurisdictions and our decision in *Billboards Divinity, LLC*, we conclude that replacing the billboard's preexisting support structure and then installing the newly built structure constitutes both a substantial repair or alteration of the billboard and the erection of a new billboard, all of which is well beyond the customary maintenance and repair permitted by the act, § 13-123, and the corresponding regulations.[8]

Our conclusion that reconstructing a billboard with a new support structure does not constitute customary maintenance and repair is also consistent with the purpose of the act. The policy behind the act was for billboards located in certain zones along our nation's federal highways to cease to exist after those billboards had reached the natural end of their lives. In fact, 23 C.F.R. § 750.707 (c), the provision of the Code of Federal Regulations that provides for the grandfathering of nonconforming signs, explicitly provides: "This clause only allows an individual sign at its particular location for the duration of its normal life subject to customary maintenance." See *Billboards Divinity, LLC* v. *Commissioner of Transportation*, supra, 133 Conn. App. 415–16; see also *Redpath* v. *Missouri Highway & Transportation Commission*, 14 S.W.3d 34, 39 (Mo. App. 1999) (act was "intended to reduce the number of signboards crowding the highways"); *National*

*Advertising Co.* v. *Bradshaw*, 48 N.C. App. 10, 19–20, 268 S.E.2d 816 ("obvious purpose of the [act was] to gradually phase out signs . . . which existed at the time of enactment but which tended to harm the public interest and welfare by causing ugliness, distraction, and safety hazards"), appeal dismissed, 301 N.C. 400, 273 S.E.2d. 446 (1980). Accepting the plaintiffs' argument would mean that a sign owner could circumvent that purpose and extend forever the nonconforming use by essentially rebuilding a nonconforming sign more than fifty years after it was built and then replacing various parts of the sign as needed until the sign bears no resemblance to its original structure, save for its size and dimensions. We will not interpret the statutes and regulations to reach such an anomalous and unreasonable result, and thus decline to interpret the act and § 13a-123 as permitting the reconstruction of billboards with wholly new support structures. See *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission*, supra, 285 Conn. 400–401; see also *Raftopol* v. *Ramey*, 299 Conn. 681, 703, 12 A.3d 783 (2011) ("We often have stated that it is axiomatic that those who promulgate statutes . . . do not intend to promulgate statutes . . . that lead to absurd consequences or bizarre results. . . . Accordingly, [w]e construe a statute in a manner that will not . . . lead to absurd results." (Citations omitted; internal quotation marks omitted.)).

We further conclude that the court's reliance on § 8-2 to hold that the plaintiff could replace the billboard's existing support structure with a new monopole without the billboard losing its nonconforming status is misplaced. The court reasoned: "It is well settled in this jurisdiction that preexisting nonconforming uses of land involve vested rights. Section 8-2 of the General Statutes restricts municipal zoning authorities from interfering with nonconforming uses." After discussing several of our Supreme Court's cases applying § 8-2 and the restrictions on a municipality's ability to eliminate a nonconforming use, the court concluded: "It cannot be found, based on the evidence adduced at trial, and applicable Connecticut case law, that the proposed change in the support structure forfeits the right of the property owner to continue the lawful nonconforming use of 215 Webster Street." Relying on this same analysis, the plaintiffs argue that "[t]he policies of the [act] and [§ 13a-123], and the regulations promulgated pursuant to those statutes, provide protections to sign owners that are consistent with the constitutional protections that apply in the zoning context." We fail to see how § 8-2 or the cases cited by the court are relevant to the legal issues involved in this case.

Section 8-2 provides in relevant part that municipal zoning regulations shall not "[p]rohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations."

There are no municipal zoning regulations at issue in the present case. This case is governed by state and federal law, specifically the act, § 13a-123, and the appropriate state and federal regulations, not by municipal zoning law. Accordingly, § 8-2, which only applies in the zoning context, does not apply here.

Given that § 8-2 has no application in the present case, the court's reliance on cases that have applied § 8-2 to municipal actions directed toward nonconforming uses is misplaced. Indeed, none of the cases relied on by the court involved billboards, the act, § 13a-123, or any of the applicable regulations.

Finally, we are not persuaded by the plaintiffs' claim that the defendants' denial of their request to *replace* the sign's existing support structure with a monopole constituted "a taking of a vested property right" without just compensation. Section 13a-123 (g) (2) provides in relevant part that the commissioner may "acquire by purchase, gift or condemnation, and shall pay just compensation upon *the removal* of [grandfathered] outdoor advertising structures, signs, displays." (Emphasis added.) In the present case, the defendants have not directed the plaintiffs to remove their sign. In fact, to the contrary, the defendants have recognized the sign's grandfathered status and have made it clear that the sign does not need to be taken down and that the plaintiffs can continue to operate and maintain it, albeit within the confines of § 13a-123-12 of the regulations. There can be no regulatory taking when a sign owner has not been told to take down a sign and, conversely, is explicitly allowed to continue operating the existing sign. See *Lamar Co., LLC* v. *Arkansas State Highway & Transportation Dept.*, 386 S.W.3d 670, 676 (Ark. App. 2011) (plaintiff's takings claim was premature when defendant had not ordered plaintiff to remove billboards); *U.S. Outdoor Advertising Co.* v. *Indiana Dept. of Transportation*, supra, 714 N.E.2d 1264 ("[t]he question of taking and compensation is not properly before this [c]ourt because the signs have not yet been removed"; additionally, no authority exists to support assertion that denial of permit amounts to order for removal of sign). Accordingly, we conclude that the plaintiffs' takings claim misses the point, given that the defendants have not directed the plaintiffs to take down their sign and have instead said only that the plaintiffs may not remove the sign to reconstruct it with a new and different support structure.

The judgment is reversed and the case is remanded with direction to render judgment for the defendants.

In this opinion the other judges concurred.

[1] A monopole is a singular pole that is used to support a billboard or other advertising structure.

[2] This permit has been in effect since its issuance in 1966 and was still in effect at the time of this appeal.

[3] Highland Street also signed the application.

[4] General Statutes § 4-176 provides in relevant part:

"(a) Any person may petition an agency, or an agency may on its own motion initiate a proceeding, for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency. . . .

"(e) Within sixty days after receipt of a petition for a declaratory ruling, an agency in writing shall: (1) Issue a ruling declaring the validity of a regulation or the applicability of the provision of the general statutes, the regulation, or the final decision in question to the specified circumstances, (2) order the matter set for specified proceedings, (3) agree to issue a declaratory ruling by a specified date, (4) decide not to issue a declaratory ruling and initiate regulation-making proceedings, under section 4-168, on the subject, or (5) decide not to issue a declaratory ruling, stating the reasons for its action. . . .

"(i) If an agency does not issue a declaratory ruling within one hundred eighty days after the filing of a petition therefor, or within such longer period as may be agreed by the parties, the agency shall be deemed to have decided not to issue such ruling. . . ."

[5] General Statutes § 4-175 (a) provides in relevant part: "If a provision of the general statutes, a regulation or a final decision, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff and if an agency . . . is deemed to have decided not to issue a declaratory ruling under subsection (i) of said section 4-176, the petitioner may seek in the Superior Court a declaratory judgment as to the validity of the regulation in question or the applicability of the provision of the general statutes, the regulation or the final decision in question to specified circumstances. . . ."

[6] Both parties filed motions for summary judgment, but the court, *Hon. Alfred J. Jennings*, judge trial referee, denied the motions.

[7] We note, as this court did in *Billboards Divinity, LLC*, that we "need not decide at this time whether the complete replacement of a nonconforming sign that was destroyed by accident, natural disaster, or foul play would constitute customary maintenance and repair of the destroyed sign so as to permit the continuation of the nonconforming use." *Billboards Divinity, LLC* v. *Commissioner of Transportation*, supra, 133 Conn. App. 419 n.5.

[8] At oral argument before this court, the plaintiffs' counsel argued that the department has the authority to regulate only the sign face itself and that the department cannot regulate a sign's support structure. Section 13a-123 (c) is directly to the contrary and makes clear that the department has the authority to regulate both the sign face and the sign's support structure as they are, essentially, one and the same. See General Statutes § 13a-123 (c) ("[t]he commissioner may promulgate regulations for the control of *outdoor advertising structures*, signs, displays and devices along interstate highways" (emphasis added)).